# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| IN RE: MAGISTERIAL DISTRICT JUDGE MARK A. BRUNO, MAGISTERIAL DISTRICT 15-1-01 | : No. 84 MM 2013 :<br>: Petition to Vacate the Order of the<br>: Supreme Court dated February 1, 2013<br>: |
| PETITION OF: MARK A. BRUNO | : ARGUED: September 10, 2013 |

### CONCURRING OPINION

|  |  |
|---|---|
|  | **DECIDED:** August 28, 2014 |
| **MR. JUSTICE BAER** | **OPINION FILED:** October 1, 2014 |

I join the majority opinion in its entirety, and write separately to set forth my concerns regarding the evolution of this case and to offer insight concerning how this Court should exercise its discretion in future cases involving a sitting jurist accused of misconduct.

As noted by the majority, Judge Bruno was indicted on January 29, 2013, in the United States District Court for the Eastern District of Pennsylvania based on alleged impropriety in carrying out his obligations in the Philadelphia Traffic Court. He was charged with one count of conspiracy, one count of wire fraud, and one count of mail fraud. On January 30, 2013, the Judicial Conduct Board ("JCB") filed with the Court of Judicial Discipline ("CJD") a petition seeking Judge Bruno's interim suspension without pay. Unaware that the CJD had been presented with the JCB's petition the day before, this Court entered an interim order on February 1, 2013, suspending Judge Bruno without pay, pending further order of this Court. We acted with confidence that the federal indictment set forth a *prima facie* case in accordance with its articulated facts, although, notably, we did not afford Judge Bruno an opportunity to respond to the indictment or otherwise present his "side of the story."

What complicated this matter was that after we entered the interim order suspending Judge Bruno without pay, the CJD proceeded to adjudicate the JCB's previously filed petition for his interim suspension. Following an evidentiary hearing and argument by the parties, the CJD determined that the indictment may not be as strong as its facial appearance, and that the appropriate sanction was to enter an order of temporary suspension, without elimination of Judge Bruno's salary. Accordingly, the CJD issued an order suspending Judge Bruno with pay, in direct contradiction to our order suspending him without pay. Judge Bruno subsequently filed a petition in this Court, requesting that we vacate our order suspending him without pay. This Court ordered briefing and oral argument on the merits of his petition; but, by interim order dated July 11, 2013, retroactively reinstated Judge Bruno's pay, pending final disposition of his petition. On July 23, 2014, Judge Bruno was acquitted of all charges. Thus, on August 28, 2014, we finally vacated our order of February 1, 2013, suspending Judge Bruno without pay, and indicated that an opinion would follow.

In that thorough and well-reasoned opinion, the majority holds that this Court possesses the authority at King's Bench to order the interim suspension without pay of sitting jurists, such as Judge Bruno. It rejects Judge Bruno's contention that this Court's supervisory authority over "the administration of all courts and supervision of all officers of the Judicial Branch," as granted by Article V, Section 10(c) of the Pennsylvania Constitution, and as invoked in this case pursuant to our King's Bench authority, was either rescinded or diminished by the adoption of Article V, Section 18, which created the Judicial Conduct Board ("JCB") and the CJD, and gave those tribunals authority to prosecute and adjudicate claims of judicial misconduct.

The majority further acknowledges, however, that our exercise of King's Bench authority is discretionary and should be employed in judicial misconduct cases only in

extraordinary circumstances, with the CJD addressing routine matters within that court's Article V, Section 18(d)(2) authority.[1] The majority declares that "[a]cting within their respective authorities and jurisdictions, both the Supreme Court and the CJD have authority to issue orders of interim suspension and to impose sanctions upon jurists. To the extent that any such orders ultimately or necessarily conflict, the order of the Supreme Court is 'supreme' and controlling." Slip op at 3.

The majority's recognition that both this Court and the CJD possess authority to impose an interim order suspending a jurist, while jurisprudentially sound, raises its own complications. As the circumstances of this matter illustrate, the fact that this Court has authority to enter an order does not necessarily mean that we should. Notably, the proceeding before the CJD encompassed an evidentiary hearing and the presentation of oral argument on the propriety of suspending Judge Bruno without pay, while this Court acted without affording him an opportunity to respond to the federal indictment.[2]

---

[1] Article V, Section 18(d)(2) of the Pennsylvania Constitution provides:

> Prior to a hearing, the [Court of Judicial Discipline] may issue an interim order directing the suspension, with or without pay, of any justice, judge or justice of the peace against whom formal charges have been filed with the court by the board or against whom has been filed an indictment or information charging a felony. An interim order under this paragraph shall not be considered a final order from which an appeal may be taken.

PA. CONST. art. V, § 18(d)(2).

[2] In its decision, the CJD emphasized:

> [T]he abundant factual background discussed in this Court's opinion was made available to this Court at the time of our evidentiary hearing, April 8, 2013. This information was not formally of record before the Supreme Court at any time up to and through the time of the issuance of its February 1, 2013 order suspending Bruno without pay.

(continued…)

Learning from this case, I favor a deliberative approach that would afford deference to the tribunal possessing concurrent authority, which conducted the factual inquiry and heard argument on the appropriateness of the loss of salary, considered the equities of the scenario, and determined that removal of Judge Bruno from the bench was sufficient to protect the integrity of the judicial system until the federal criminal charges were adjudicated. In all candor, had I known that the JCB had already filed in the CJD the petition seeking the temporary suspension of Judge Bruno without pay, and that the CJD was prepared to take imminent action thereon, I would have been content to await the CJD's action, rather than issue our *sua sponte* interim order of February 1, 2013, suspending Judge Bruno without pay.

That being said, I believe that unanswered questions remain regarding the appropriate exercise of this Court's discretion in future judicial misconduct cases. For instance, the majority holds that the CJD should address routine matters of judicial misconduct, with this Court acting only in extraordinary circumstances. The majority does not, however, define what constitutes extraordinary circumstances, and leaves that determination to develop incrementally in the law. Further, there is the question of the appropriate timing for this Court to act. As a general matter, I believe we should allow the CJD a fair opportunity to act before we determine whether our involvement in a judicial misconduct case is necessary. While I do not endeavor to define extraordinary circumstances or pronounce precise timeframes in the paradigm of the facts presented, or more broadly, I suggest that we coordinate the efforts of this Court and the CJD to utilize judicial resources in the best manner and avoid issuance of conflicting orders.

---

(…continued)
In re Bruno, 69 A.3d 780, 798 (Pa. Ct. Jud. Disc. 2013).

In furtherance of these goals, I propose that the JCB provide notice to this Court, and inform the parties of such notice, when it files in the CJD a petition for interim suspension of a jurist. Mere knowledge that the JCB is pursuing a particular judicial misconduct matter in the CJD would allow this Court deliberately to either await action by the CJD or decide that immediate action by this Court is, nevertheless, required. Either way, we would proceed with open eyes, and the possibility of both tribunals employing duplicative judicial resources and entering inconsistent directives would be reduced or eliminated.

This could be accomplished by amendment to the Judicial Conduct Board Rules, which already contemplate notice to the CJD when a judicial officer is charged with a felony, and notice to this Court when the JCB becomes aware of information warranting the exercise of our supervisory jurisdiction over judicial officers. Specifically, Judicial Conduct Board Rule 14 provides:

> Rule 14. Special Notice to the Supreme Court or the Court of Judicial Discipline.
>
> (A) Whenever the Board becomes aware of an indictment or information charging a felony against a Judicial Officer, the Board may file appropriate notice with the Court of Judicial Discipline.
>
> (B) Whenever the Board becomes aware of information related to a Judicial Officer which may, as provided by law, require or permit the exercise of the Supreme Court's inherent power over the unified judicial system, the Board may file appropriate notice with the Supreme Court.

In light of the difficulties that arose in the instant case, the JCB should consider amending Judicial Conduct Board Rule 14 to provide for additional notice to this Court when it has filed in the CJD a petition for interim suspension of a jurist, regardless of its

underlying justification.[3]   Providing such notice to this Court would enable us to be more cognizant of potential parallel proceedings when acting to protect the integrity and dignity of the unified judicial system and the citizens of this Commonwealth in these important matters.[4]

In this regard, I note the approach followed in child custody disputes pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), 23 Pa.C.S. §§ 5401-5482, which requires communication between trial court judges in Pennsylvania and judges from different states involved in ongoing child custody disputes.   See e.g. 23 Pa.C.S. § 5447 (providing that when a proceeding to enforce a custody order is commenced in Pennsylvania, and a proceeding to modify the same order is pending in another state, the Pennsylvania court shall immediately communicate with the other court

---

[3] The JCB has the constitutional authority to "establish and promulgate its own rules of procedure." PA. CONST. art V., § 18(a)(6).   I suggest consideration of the issue only to facilitate a more efficient exercise of concurrent authority.

[4] In considering a potential rule change, strict adherence to the constitutional protections of confidentiality, of course, is required.   In that regard, Article V, Section 18(a)(8) provides, in relevant part, as follows:

> Complaints filed with the board or initiated by the board shall not be public information. Statements, testimony, documents, records or other information or evidence acquired by the board in the conduct of an investigation shall not be public information. . . .   All proceedings of the board shall be confidential except when the subject of the investigation waives confidentiality. . . .

PA. CONST. art. V, § 18(a)(8).   While the matter will have to be examined in detail prior to the promulgation of any new rules, the limited notice to this Court suggested herein does not appear to violate Art. V, § 18(a)(8), as the JCB can file under seal in this Court a notice indicating that it has sought interim suspension of a jurist in the CJD.   This procedural notice to our Court will not render public any complaint, statement, testimony, document, record or other evidence acquired by the JCB in its investigation; nor does it appear to violate the confidentiality afforded the actual proceedings of the Board.

to avoid duplicative litigation). Admittedly, this analogy is not directly on point because, unlike trial courts with equivalent authority, the CJD is an inferior tribunal to this Court. Nevertheless, similar to trial courts in different jurisdictions acting in furtherance of the unified goal of avoiding contradictory custody rulings, this Court's knowledge of a pending action in the CJD would be helpful in determining the appropriate course of action and avoiding inconsistent edicts in judicial misconduct cases.